**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID E. COIT,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 10-cv–5704** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Defendant.** | : | |

<u>**REPORT AND RECOMMENDATION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **May 9, 2012**

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying the claims of David E. Coit ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Plaintiff has filed a request for review of the final decision of the Commissioner.  Defendant has filed a response, and Plaintiff filed a Reply.  The matter is before me for a Report and Recommendation.  For the reasons set forth below, I respectfully recommend that Plaintiff's request for review be denied, and judgment be entered in favor of Defendant.

I.       **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on April 16, 1967, and was forty years old on the application date.  (R. 25).  Plaintiff completed the eleventh grade.  (R. 67).  Plaintiff lives with his girlfriend, his teenage son, and his six year old daughter.  (R. 22, 38, 544-46).  Plaintiff has no past relevant work history.  (R. 25).

Plaintiff protectively filed an application for SSI on November 19, 2007, alleging that he

has been disabled since March 7, 2003, due to mental and physical impairments.  (R.15).

Plaintiff later amended his alleged onset date to November 19, 2007.  (R. 15, 66).  Plaintiff's

applications were denied at the initial level on July 16, 2008, and Plaintiff requested a hearing

before an administrative law judge ("ALJ").  (R. 15, 73-74).  A hearing was held on February 18,

2009, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. 64-72).  At

that hearing, the ALJ decided to obtain physical and mental health consultative examinations

before proceeding any further because Plaintiff had failed to show up for the previously

scheduled examinations.  (R. 69-71).  Following those examinations, a second administrative

hearing was held on November 17, 2009, and which Plaintiff and his attorney again appeared.

(R. 33-63).  A vocational expert ("VE") also appeared and testified.  (R. 33-63).

In a decision dated December 23, 2009, the ALJ found that Plaintiff was not disabled

within the meaning of the SSA since November 19, 2007.  (R. 26).  The ALJ found that Plaintiff

retained the residual functional capacity to perform a significant number of jobs in the economy.

(R. 26).  Plaintiff requested review by the Appeals Council, which was denied on August 26,

2010.  (R. 1-11).  The ALJ's decision thus became the final decision of the Commissioner.

Plaintiff brought this civil action on October 27, 2010, seeking judicial review of the ALJ's

decision.  42 U.S.C. § 405(g).  The matter was referred to this Magistrate Judge for preparation

of a Report and Recommendation.


II.      STANDARD OF REVIEW

Under the Social Security Act, a claimant is disabled if he or she is unable to engage in

"any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than twelve (12) months."  42 U.S.C. § 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905.  A five-step sequential analysis is used to evaluate a disability claim.[1]  The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of his or her age, education, work experience and residual functional capacity.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  The District Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984).  Substantial evidence is "more than a

---

[1]  The steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he [or she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his [or her] physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity for work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his [or her] past work. If the claimant cannot perform his [or her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920.

mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r. of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

## III.    DISCUSSION

Plaintiff's alleged impairment involves an inability to work due to mental disorders and various physical impairments.  (R. 74, 122).  The ALJ proceeded through the sequential evaluation process and found that Plaintiff was not disabled due to his impairments.  By decision dated December 23, 2009, the ALJ found:

> 1.    [Plaintiff] has not engaged in substantial gainful activity since November 19, 2007, the application date (20 C.F.R. 416.971 *et seq.*).
>
> 2.    [Plaintiff] has the following severe impairments: residuals of gunshot wound to the left leg and foot, residuals bilateral hand pain from injuries, a neck disorder, a low back disorder, migraine headaches, ulnar neuropathy of the right elbow, ptosis of the left eye, left ear humming, major depressive disorder, post traumatic stress disorder, and a generalized anxiety disorder (20 C.F.R. 416.920(c)).
>
> 3.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b).   Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. [Plaintiff] retains the ability to perform light level work which: consists of simple routine tasks secondary to a moderate (limited, but still able to function satisfactorily) limitation in concentration, persistence, and pace; permits not more than occasional contact with supervisors and fellow employee, and no contact with the public; and which allows the wearing of sunglasses while performing the work.

5.      [Plaintiff] has no past relevant work (20 C.F.R 416.965).

6.      [Plaintiff], born on April 16, 1967, was 40 years old on the date the application was filed and is currently 42 years old, ages which are defined as a younger individual age 18-49 (20 C.F.R. 416.963).

7.      [Plaintiff] has a limited education and is able to communicate in English (20 C.F.R. 416.964).

8.      Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work (20 C.F.R. 416.968).

9.      Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 C.F.R. 416.969 and 416.969(a)).

10.     [Plaintiff] has not been under a disability, as defined in the Social Security Act, since November 19, 2007, the date the application was filed (20 C.F.R. 416.920(g)).

(R. 15-26).  Thus, the ALJ reached step five of the five-step sequential evaluation and found that Plaintiff was not disabled.  (R. 26-27).

Plaintiff contends that the evidence of record demonstrates that he is disabled, and that the ALJ's decision is not supported by substantial evidence.  Plaintiff specifically argues that: (1) the ALJ improperly rejected the opinion of the consultative examiner in evaluating Plaintiff's residual functional capacity (Pl. Br. at 7-13); and (2) the ALJ relied on an inadequate hypothetical (Pl. Br. at 14-15).  Plaintiff does not challenge the ALJ's decision concerning his alleged physical impairment.  Therefore, the Court's discussion will be limited to the evidence relative to Plaintiff's alleged mental impairment.  In my review of Plaintiff's claims, I considered the various sources of medical evidence, the submissions of counsel, the testimony at the administrative hearing, and the ALJ's decision.

### A.       The ALJ's Evaluation of the Consultative Medical Examiner's Opinion is Supported by Substantial Evidence.

On April 3, 2009, Carl D. Herman, M.D., a consultative examiner, met with Plaintiff for a psychiatric re-examination.[2]  (R. 544-545).  Dr. Herman diagnosed post traumatic stress disorder ("PTSD") manifested by schizoaffective disorder, history of childhood ADHD, and substance dependence in remission.  (R. 545).  Dr. Herman noted Plaintiff's reported symptoms[3] and his

---

[2]  Dr Herman previously conducted a consultative examination, on February 23, 2006. (R. 544-547).

[3]  Plaintiff reported that he experiences intrusive thoughts of many past traumatic events; he has nightmare of dangerous situations; he "hears voices arguing jumbled sounds;" he experiences "blackouts in which he will find himself some place, not knowing how he got there." (R. 544).  Plaintiff also "admits chronic depression, rage, believes people are out to get him and he thus avoids crowds.  He denies suicidal ideation, but admits to feeling he could easily lose control."  (R. 544).  Plaintiff also reported that he does minimal chores and cooking; he shops only when accompanied; he can take a bus if necessary but avoids crowds; he watches some TV,

observations of Plaintiff's mental status.[4]  (R. 544-545).  Dr. Herman found Plaintiff to be a

"highly dysfunctional disturbed man, pre-occupied with past traumatic events, social avoidant

and paranoid . . . ."  (R. 545).  Dr. Herman completed a medical source statement form and

opined that Plaintiff was markedly or extremely limited in the mental activities related to

understanding, remembering, and carrying out instructions.  (R. 549).  Dr. Herman also opined

that Plaintiff was extremely limited in the mental activities related to the ability to respond

appropriately to supervision, co-workers, and work pressures.  (R. 549).  Dr. Herman supported

his findings by citing Plaintiff's poor immediate retention, very poor short term memory, severe

depression, anger, paranoia, social avoidance, and intrusive thoughts.  (R. 549).

The ALJ explicitly considered Dr. Herman's opinion, but determined that the opinion was

not entitled to any weight.  (R. 24).  The ALJ found that Dr. Herman's opinion was not supported

by other evidence of record; the opinion was based mostly on Plaintiff's objective complaints,

which the ALJ did not find fully credible; and the opinion was not based on clear mental status

examination findings.  (R. 24).  The ALJ explained that Dr. Herman's opinion was not supported

by the mental health treatment records available, which "indicate the existence of not more than a

moderate mental health problem."  (R. 24).  In support of his decision, the ALJ discussed the

---

listens to the radio, and sits in the park.  (R. 544).

[4]  Dr. Herman reported that Plaintiff is aware of the month; he has poor immediate retention ("two out of five items"); he has very poor short term memory ("one out of five items"); he can repeat only four digits forward when presented with five; and he is able to interpret a proverb abstractly.  (R. 545).  Dr. Herman also observed that Plaintiff's "attitude is angry and he seems barely able to control his rage.  Affect is intense.  Mood is severely depressed.  Thinking is pre-occupied with intrusive thoughts and alleged beating, but otherwise logical, coherent, relevant, with no flight of ideas or loosening of associations . . . . Judgment is impaired and he has only partial insight."  (R. 545).

mental health treatment records from Northeast Community Mental Health Center ("Northeast"), Pan American Mental Health Services ("Pan American"), and Asociacion Puertorriquenos En Marcha ("APM"), where Plaintiff periodically sought treatment.  (R. 23-24).

Specifically, the ALJ noted that Plaintiff attended therapy and had psychiatric checks at Northeast from June 2007 through September 2007, and that Plaintiff was discharged for failing to respond to telephone and mail contacts.  (R. 23, 402-403).  The ALJ noted that discharge documents from Northeast indicate an ongoing need for treatment of depression and PTSD.  (R. 23-24, 402-403).  The ALJ also accurately observed that the Northeast records indicate GAF scores of 50 to 55.  (R. 24, 402).  Regarding the Pan American records, the ALJ noted periods of treatment from November 2007 through January 2008, and January 2009 through August 2009. (R. 24).  The ALJ noted "regular medication check-ups through August 20, 2009."[5]  (R. 24, 559). The ALJ noted that Plaintiff was initially prescribed medication at Pan American "but did not continue treatment;" however, Plaintiff returned for treatment in January 2009.  (R. 24).  When Plaintiff returned for treatment in January 2009, the ALJ accurately noted that Plaintiff was "properly oriented, cooperative, and friendly with good insight and intact memory."[6]  (R. 24, 515).  Regarding the APM records, the ALJ noted that Plaintiff initiated care in July 2009, and he was being treated with counseling and medication.  (R. 24).  The ALJ noted that the September

_____

[5]  The final medication check-up states that Plaintiff was doing "ok [with] Rx."  (R. 559).

[6]  Plaintiff states that the ALJ failed to discuss the GAF score of 40 that was assessed in January 2009; however, the ALJ sufficiently discussed the contents of the report that noted the GAF score of 40.  (R. 24, 515-516).  Moreover, the ALJ specifically noted subsequent GAF scores that ranged from 50-60.  (R. 24).  As the ALJ explains, GAF scores are helpful in tracking the progress of mental health treatment.  (R. 24).  In this case, the one time GAF score of 40 was followed by improved scores, which the ALJ discussed.

30, 2009, psychiatric evaluation included a diagnosis of chronic PTSD and a GAF score of 50-60.  (R. 24).  The ALJ observed that the latest psychiatric record, dated October 28, 2009, shows that Plaintiff was "reported to be alert, cooperative, and improved with no medication side effects."  (R. 24).  As the ALJ also noted, the medical record includes a CT scan of Plaintiff's brain, which was interpreted as unremarkable, and an MRI scan of Plaintiff's brain, which was interpreted as showing no significant abnormalities.  (R. 22).  The ALJ also observed that Plaintiff testified that he traveled to the hearing alone by using public transportation, and that Plaintiff's typical day includes watching his six year old daughter.  (R. 22).  Finally, the ALJ noted that Plaintiff is able to attend to his personal needs; there is no evidence that Plaintiff is unable to get along with his treating physicians or anyone else; and Plaintiff has had no episodes of decompensation.  (R. 20).  Thus, the ALJ considered and discussed the relevant medical records and Plaintiff's own testimony.

The ALJ also gave Plaintiff the benefit of the doubt as to some of his mental limitations and included them into his residual functional capacity finding ("RFC").  (R. 21).  In particular, the ALJ determined that Plaintiff retained the ability to perform only light work with a moderate limitation in concentration, persistence, and pace, and with no contact with the public, and no more than occasional contact with supervisors and fellow employees.  (R. 21).

Plaintiff contends that the ALJ improperly disregarded the April 3, 2009, opinion of Dr. Herman.  (Pl. Br. at 7-14).  Plaintiff argues that the ALJ's stated reasons for rejecting the opinion of Dr. Herman are wrong and are not supported by the record.  (Pl. Br. at 9).  Defendant argues that the ALJ properly rejected Dr. Herman's assessment because it was largely based on Plaintiff's subjective complaints and it deviated from the mental health treatment records.  (Def.

9

Br. at 6-10).  Defendant notes that Dr. Herman based his opinion on a summary of Plaintiff's

own reported symptoms, but the ALJ assessed Plaintiff's credibility and found it lacking.  (Def.

Br. 10-13) (R. 24-25).  Thus, Defendant contends that the ALJ properly found Dr Herman's

opinion was entitled to no weight.  (Def. Br. at 6-15).

       In evaluating Plaintiff's disability claim, the ALJ must determine what weight to give to

the opinion of Dr. Herman.  Dr. Herman is a non-treating, examining physician.[7]  (R. 24).  In

determining what weight, if any, to give Dr. Herman's opinion, the ALJ must consider the factors

set forth in 20 C.F.R. § 416.927; SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).  These

factors include: (1) examining relationship; (2) nature and extent, and length of treating

relationship; (3) the supporting explanations provided for the opinion; (4) the consistency of the

opinion with the records as a whole; (5) the medical source's specialization; and (6) any other

relevant factors.  20 C.F.R. §§ 416.927(c)(1)-(6).

       Here, the ALJ properly evaluated the opinion according to the factors stated above.  First,

the ALJ addressed the examining and treating relationship by observing that Dr. Herman was an

examining psychiatrist who met with Plaintiff on April 3, 2009.[8]  (R. 24).  The ALJ's observation

that Dr. Herman is a psychiatrist is an acknowledgment of the medical source's specialization.

(R. 24).  The ALJ then considered the explanations provided for the opinion.  (R. 24).  The ALJ

---

    [7]  A non-treating source is a physician, psychologist, or other acceptable medical source
who has examined the claimant but does not have, or did not have, an ongoing treatment
relationship with the claimant.  20 C.F.R. §§ 404.1502, 416.902.

    [8]  Plaintiff argues that the ALJ failed to address Dr. Herman's report dated February 27,
2006.  However, that report precedes the alleged onset date.  (R. 546-547).  Additionally, the
relevant report from April 3, 2009, which the ALJ explicitly discussed, summarizes the prior
report and re-states the diagnosis from the prior report.  (R. 544).

found Dr. Herman's supporting explanations inadequate.  (R. 24).  Specifically, the ALJ stated

that Dr. Herman's opinion was "based solely upon [Plaintiff's] subjective reports."  (R. 24).  The

ALJ also found Dr. Herman's report inadequately supported by clear mental status examination

findings.[9]  (R. 24).  Finally, the ALJ considered the consistency of the opinion with the record as

a whole in finding that Dr. Herman's opinion was "not supported by the mental health records

available."  (R. 24).  The ALJ explained that Dr. Herman found marked and extreme limitation in

Plaintiff's ability to perform almost all mental health related work activities, but the "records

indicate the existence of not more than moderate mental health problem[s]."  (R. 24).  Thus, the

ALJ properly evaluated the non-examining opinion according to factors set forth in 20 C.F.R. §

416.927 and gave a sufficient explanation for his decision.

    As stated above, the ALJ addressed the relevant mental health treatment records from

Northeast, Pan American, and APM, as well as Plaintiff's own testimony concerning his mental

limitations.  (R. 22-25).  The ALJ correctly observed that Plaintiff testified that he traveled to the

hearing alone by using public transportation, and that Plaintiff's typical day includes watching

his six year old daughter.  (R. 22, 38, 53).  The ALJ also correctly found that the treatment

records indicate less serious impairment than Dr. Herman found.  For example, the ALJ noted

---

    [9]  Dr. Herman's narrative report does include some mental status observations, including
comments on Plaintiff's appearance, memory, affect, mood, judgment, insight, and thought;
however, these observations are not structured in a complete list of findings.  (R. 544-545).
Also, Dr. Herman does not address level of consciousness, dress, posture, eye contact, speech
and motor activity, or his own reaction to the patient.  (R. 544-545).  *See* The Mental Status
Examination - Clinical Methods - NCBI Bookshelf, available at:
http://www.ncbi.nlm.nih.gov/books/NBK320/ (Last visited: 05/01/2012).  While Dr. Herman
notes that Plaintiff's "personal hygiene is satisfactory and there are no unusual mannerisms," it is
unclear if Dr. Herman found Plaintiff's speech and motor activity normal.  (R. 544).  Thus, the
ALJ was justified in observing inadequate mental status examination findings by Dr. Herman.

that the treating sources at Northeast assessed Plaintiff's GAF score between 50 to 55, and his

GAF upon discharge was 55, which indicates moderate symptoms.[10]  (R. 24, 402).  Additionally,

the ALJ mentioned the treatment records at Exhibit 10F, which include a June 18, 2007,

evaluation which states that Plaintiff denies getting confused; Plaintiff has memory retention; and

Plaintiff denies difficulty in learning, attention, concentration, and cognition.  (R. 23-24, 414-

427).  At that time, Plaintiff reported that he is able to care for himself without the support of

others.  (R. 422).  The Northeast therapist also observed normal and productive speech; guarded

behavior but a courteous, pleasant and tactful relationship with the therapist; and alert attention.

(R. 424-426).  The ALJ noted that Plaintiff began a period of treatment at Pan American on

January 29, 2009, at which time a re-evaluation was conducted.  (R. 24).  As the ALJ references,

the re-evaluation states that Plaintiff was oriented to time, place, and person; Plaintiff was

cooperative but hostile and irritable; Plaintiff had adequate attention span and frustration

tolerance; Plaintiff's psychomotor activity and speech were normal; Plaintiff's memory was

intact for recent and remote;[11] and Plaintiff's insight was good.  (R. 24, 515).  The ALJ also

---

[10]  The GAF score is a measurement of a person's overall psychological, social, and
occupational functioning, and is used to assess mental health.  Diagnostic and Statistical Manual
of Mental Disorders, 4th ed. Text Revision (2000), ("DSM IV-TR"), at 32.  Each 10-point range
in the GAF scale has two components: symptom severity and level of functioning.  Id.  For
example, a GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in social, occupational, or school
functioning (e.g., no friends, conflict with peers or co-workers).  DSM IV-TR, at 34.  Where the
individual's symptom severity and level of functioning are discordant, the final GAF rating
always reflects the worse of the two.  DSM IV-TR, at 33.

[11]  Plaintiff argues that Defendant may not rely on the evidence of intact memory to
contradict Dr. Herman's opinion because "the ALJ did not rely on any discrepancy between Dr.
Herman's findings and those of the treating sources regarding Plaintiff's memory."  (Plt. Reply at
3-4, fn 3).  I disagree.  The ALJ states that Dr. Herman's opinion was given little weight because
it was "not supported by the mental health treatment records available."  (R. 24).  A contradiction

noted that Plaintiff went for regular medication checks through August 20, 2009, at which time

Plaintiff was doing okay with his medication.  (R. 24, 559).  The ALJ accurately summarized the

documentation of medication and counseling obtained at APM from July 2009 through October

2009.  (R. 24).  As the ALJ noted, the final mental status examination was positive.[12]  (R. 24,

565).  The ALJ also noted that Plaintiff saw Irwin Jacobson on November 3, 2008, and that Dr.

Jacobson "offered the opinion that [Plaintiff] was 'very employable.'"[13]  (R. 23).  The ALJ also

properly found Plaintiff was not fully credible concerning his reported limitations.[14]  In sum, I

_____

between Dr. Herman's report and the treating source reports concerning memory is just one
example of how Dr. Herman's report is not supported by the treatment records.  The ALJ
specifically noted that Plaintiff's memory was "intact" as of January 29, 2009.  (R. 24).  Reading
the ALJ's decision as a whole, the clearly based his decision to reject Dr. Herman's opinion on
this fact.

[12]  The October 28, 2009, mental status examination from the treating source finds
Plaintiff alert, animated, content in mood, neutral thought content, and intact cognition.  (R. 565).

[13]  While Plaintiff appears to have been referred to Dr. Jacobson in relation to his back
and neck pain, Dr. Jacobson's review of symptoms included "psych."  (R. 455).

[14]  Plaintiff does not take issue with the ALJ's credibility determination.  Nevertheless, I
note that the ALJ properly addressed Plaintiff's credibility, and his decision is supported by
substantial evidence of record.
    Social Security Regulations require a two-step evaluation of subjective symptoms: (1) A
determination as to whether there is objective evidence of a medically determinable impairment
that could reasonably be expected to produce the symptoms alleged; and (2) an evaluation of the
intensity and persistence of the pain or symptoms and the extent to which it affects the
individual's ability to work.  20 CFR §§ 404.1529(b)-(c), 416.929(b)-(c).
    Here, the ALJ first found that Plaintiff had a medically determinable impairment that
could reasonably be expected to cause the alleged symptoms. (R. 24-25).  At the second step, the
ALJ concluded that Plaintiff's subjective complaints concerning the intensity, persistence and
limiting effects of these symptoms were not credible "in light of discrepancies between
[Plaintiff's] assertions and information contained in the documentary reports." (R. 24-25).  The
ALJ cited multiple medical reports questioning Plaintiff's subjective symptoms and noting
significant symptom magnification, including a report from S. Nadeem Ahsan, M.D., of
"significant symptom magnification . . . corroborated by Dr. Liebenberg."  (R. 25, 381).

find that substantial evidence of record supports the ALJ's decision regarding the medical evidence and Plaintiff's testimony.  The ALJ properly determined that Dr. Herman's opinion of severe to extreme impairment was entitled to no weight in light of reliance upon Plaintiff's own statements and in light of the evidence from the treating sources, which indicated less serious impairment.

After having thoroughly reviewed the record, I conclude that, while the ALJ's decision to afford no weight to Dr. Herman's opinion is not the only rational conclusion one could draw from the evidence, it is nonetheless supported by substantial medical evidence, as outlined above, and the ALJ met his legal obligation to explain his reasoning.  *See Hartranft*, 181 F.3d at 360 (holding that if a conclusion of the ALJ is supported by substantial evidence, the court may not set aside the ALJ's decision even if it would have decided the factual inquiry differently). Therefore, Plaintiff's claim to the contrary must fail.

**B.**     **The ALJ's Hypothetical to the VE was Adequate.**

Once it has been determined that a Social Security claimant can no longer perform his past relevant work, the burden shifts to the Commissioner at step 5 to prove that there are "significant jobs in the national economy that claimant can perform considering her age, education, work experience and residual functional capacity."  20 CFR §§ 416.969, and 516.969(a).  In the instant case, the ALJ discharged his burden by eliciting testimony from a Vocational Expert ("VE") in response to a hypothetical question.  (R. 26).

To successfully carry the burden of proof at step 5 through use of a hypothetical question, the ALJ must pose a hypothetical to a vocational expert that contains all the limitations established by the record.  *Ramirez v Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  Plaintiff

14

contends that the ALJ failed to include the limitations identified by Dr. Herman.  (Plt. Br. at 14-15).  Plaintiff asserts the ALJ improperly rejected the opinion of Dr. Herman and thus failed to include his findings in the hypothetical to the VE.  (Plt. Br. at 15).  Plaintiff's argument fails because, as discussed above, the ALJ properly determined that Dr. Herman's opinion was entitled to no weight.  Accordingly, the limitations identified by Dr. Herman need not be included in the hypothetical to the VE.

**IV.     CONCLUSION**

Having examined the evidence of record, I find substantial evidence to support the ALJ's decision.  The ALJ accurately summarized the relevant medical evidence and explained his decision.  The ALJ's stated reasons for rejecting Dr. Herman's opinion are supported by the record.  The ALJ's hypothetical question properly captures Plaintiff's residual functional capacity.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this ___9th___ day of May, 2012, it is RESPECTFULLY RECOMMENDED

that Plaintiff's request for review be denied, and judgment be entered in favor of Defendant.


**BY THE COURT:**


____/s/ Lynne A. Sitarski_____
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**

16